UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO


JUSTIN LYLE IZATT,

                    Petitioner,

      v.

UNITED STATES OF AMERICA,

                    Respondent.

Case No. 1:13-CV-00431-EJL
           1:10-CR-00112-EJL

**MEMORANDUM DECISION
AND ORDER**


Pending before the Court in the above entitled matter is Petitioner Justin Lyle

Izatt's Motion to Vacate or Set Aside Sentence under 28 U.S.C. § 2255 (CIV Dkt. 1, CR

Dkt. 114). This matter is fully briefed by the parties.

Having fully reviewed the record, the Court finds that the facts and legal

arguments are adequately presented in the briefs and record. Accordingly, in the interest

of avoiding further delay, and because the Court conclusively finds that the decisional

process would not be significantly aided by oral argument, this matter shall be decided on

the record before this Court without oral argument.


**MEMORANDUM DECISION AND ORDER - 1**

## FACTUAL BACKGROUND

Mr. Izatt was originally indicted on one count of possession with intent to distribute 50 grams or more of a mixture and substance containing methamphetamine. The charge was amended to possession with intent to distribute 50 grams of actual methamphetamine. Defendant retained two attorneys to represent him at trial. The jury found Mr. Izatt guilty on the amended charges (CR Dkt. 63). Because this conviction was Mr. Izatt's third felony conviction for controlled substances, the Court had no discretion at sentencing and Mr. Izatt was sentenced to life imprisonment, a 10 year term of supervised release, and a $100 special assessment.

Prior to sentencing, Mr. Izatt filed a motion for acquittal which was denied by the Court. CR Dkt. 70. Mr. Izatt filed a direct appeal challenging his life sentence and certain rulings made during the course of the trial. The Ninth Circuit affirmed the District Court. CR Dkts. 93 and 95. The United States Supreme Court denied his Petition for Writ of Certiorari. CR Dkt. 97. Mr. Izatt next filed a motion for a new trial. CR Dkt. 98. This motion was denied. CR Dkt. 103. This ruling was also appealed to the Ninth Circuit. The Ninth Circuit affirmed the District Court's denial of the motion for a new trial. CR Dkts. 118 and 119.

Now, Mr. Izatt has filed his § 2255 motion alleging ineffective assistance of counsel during the pre-trial phase of his criminal case, during the jury phase, and during the sentencing phase. Mr. Izatt has provided declarations in support of his motion. The

Government has responded to the motion and included an affidavit of Mr. Douglas Nelson, one of Mr. Izatt's trial attorneys.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, the Court recognizes that a response from the government and a hearing are required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief...." Furthermore, a hearing must be granted *unless* the movant's allegations, "when viewed against the record, either fail to state a claim for relief or are 'so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir.); *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985). However, a district court may summarily dismiss a Section 2255 motion "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief...." Rule 4(b), Rules Governing Section 2255 Proceedings in the United States District Court. Thus in order to withstand summary dismissal of his motion for relief under Section 2255, defendant "must make specific factual allegations which, if true, would entitle him to relief on his claim." *United States v. Keller*, 902 F.2d 1391, 1395 (9th Cir. 1990). In the present case, the legal issues presented do not require an evidentiary hearing.

# INEFFECTIVE ASSISTANCE OF COUNSEL

## 1. Standard of Review for Ineffective Assistance of Counsel Claim

The Sixth Amendment guarantees "the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show both (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 692, 694 (1984).

Establishing "deficient performance" requires the movant to show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687; *Harrington v. Richter*, 562 U.S. 86, 104 (2011). "Deficient performance" means representation that "fell below an objective standard of reasonableness." *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011). In evaluating counsel's performance, the court must apply a strong presumption that counsel's representation fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689 (A "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.").

Prejudice means that the error actually had an adverse effect on the defense. To demonstrate prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the movant as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697. Nor does the court need to address both prongs of the *Strickland* test if the petitioner's showing is insufficient as to one prong. *Id.* at 697.

**2. Pre-Trial Claim**

Petitioner claims attorney, Mr. Nelson, spent very little time with him prior to trial and his failure to spend more time with Mr. Izatt resulted inadequate preparation for trial. Petitioner claims counsel failed to spend sufficient time conferring with Mr. Izatt, discussing trial strategies, and discussing potential witnesses and evidence for the defense. Petitioner claims counsel failed to investigate potential witnesses for the defense as requested by Petitioner.

It is important to note that Mr. Izatt had *two* attorneys representing him. One attorney lived in the Boise area where Mr. Izatt was being detained. The other attorney lived in Hailey, Idaho, several hours from where Mr. Izatt was being detained. The § 2255 motion appears to be focused on alleging Mr. Nelson was ineffective, not Mr. Gatewood. Mr. Nelson indicates in his affidavit that Mr. Gatewood was responsible for meeting with Mr. Izatt more regularly than he met with him. This explanation is not disputed by Mr. Izatt.

As to not spending enough time with Mr. Izatt, Mr. Nelson is clear in his affidavit he does not spend a lot of time with any client and this case was not complex even though Mr. Izatt was facing a life sentence if convicted. Mr. Nelson indicates he did talk with certain witnesses, but determined those witnesses would not be helpful to the trial strategy. The strategy was to show the informant, Mr. Harvey, had access to the garage where the drugs were stored and they were his drugs, not Mr. Izatt's. Mr. Harvey was offered immunity in exchange for his testimony. Mr. Nelson's strategy was to argue the jury should place little weight on Mr. Harvey's testimony based on his deal for immunity. Mr. Nelson indicates in his affidavit he personally interviewed Mr. Harvey two times before trial. Mr. Nelson indicates this was unusual for him to be able to interview a confidential informant for the Government before trial.

Mr. Nelson also sets forth in his affidavit why he elected not to call other witnesses at trial. Since Mr. Izatt did not have a regular source of income, but had many valuable assets Mr. Nelson thought the jury might determine the assets were beyond his means and must be from drug activities – regardless of how his friends and family testified.

Failure to interview other witnesses was a strategic call and it does not establish ineffective assistance of counsel especially in light of the other trial testimony in this matter. "Even the best criminal attorneys would not defend a particular client the same way." *Strickland* at 689 citing *Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58 N.Y.U.L.Rev. 299, 343 (1983). Simply put, Mr. Nelson's failure to interview certain witnesses (when advised what they would testify to) did not affect the outcome of this case and do not demonstrate ineffective assistance of counsel in preparing for trial.

As to counsel's emergency motion to continue the trial without Mr. Izatt's consent, the Court found the medical issues submitted by counsel justified a continuance. Mr. Izatt's constitutional rights were not violated as the Speedy Trial Act provides for continuances for good cause shown, regardless of whether or not the defendant agrees with the continuance. Mr. Izatt would have been prejudiced if a new lawyer had to step in on short notice. Instead he benefitted from continuity of counsel. There is no showing that the short continuance impacted the outcome in this case, so it cannot be considered a basis for ineffective assistance of counsel.

The claim for ineffective pretrial assistance of counsel is denied.

**MEMORANDUM DECISION AND ORDER - 7**

### 3. Trial Claim

Petitioner sets forth a string of examples alleging Mr. Nelson was ineffective at trial. Mr. Nelson is an experienced criminal defense attorney and he responded in his affidavit why he took certain actions. In examining these claims, it is important to note that Mr. Izatt does not contest that he told Mr. Nelson prior to the trial that he did not want to place the blame for the drugs on either of his friends who had access to his house: Mariah Pace or Holly Sutherland. Based on this desire, the strategy for trial was to discredit Mr. Harvey's testimony as being motivated by his immunity deal and to have Mr. Izatt testify the drugs were not his but were planted by Mr. Harvey.

At some point, the defense team decided to call Ms. Pace as a witness in its case-in-chief. Ms. Pace had not been called in the Government's case-in-chief. It is unclear from the record when this decision was made. Ms. Pace's testimony was not mentioned by Mr. Nelson in his opening when he implied Justin would likely testify to discuss his relationship and transactions with Harvey. However, often who actually testifies changes as the trial progresses. Based on the admission of Mr. Izatt's prior drug convictions by the Court under Rule 404, that may have also impacted whether Mr. Izatt would take the stand.

Mr. Gatewood (not Mr. Nelson) handled the examination when Ms. Pace testified that the drugs were hers, not Mr. Izatt's and she was living at Mr. Izatt's house at the time. At that point, it no longer made sense for Mr. Izatt to testify that the drugs were planted by Mr. Harvey as implied in the defense opening. What the defense did not expect was that the Government would offer an immunity deal to Ms. Pace to testify truthfully about the source of the drugs over the evening break before she testified before the jury but after Fifth Amendment issues had been addressed by the Court outside the presence of the jury. The Court had allowed Ms. Pace to be examined by defense and government counsel outside the presence of the jury to allow her to raise a Fifth Amendment privilege to certain questions the evening before she testified and before the jury.

So after Ms. Pace testified for the defense, the government cross-examined Ms. Pace to allow the jury to see if her testimony about getting the drugs from another friend who was in jail made sense and if she was credible. A model instruction about her benefits from the Government affecting her credibility was given to the jury just as it was for Mr. Harvey who also received benefits from the government for testifying.  Jury Instructions 25 and 26, Dkt. 60. The Court finds the admission of ownership by Ms. Pace may have impacted the trial strategy of having Mr. Izatt testify, but nothing actually prevented Mr. Izatt from electing to testify on his behalf after Ms. Pace said the drugs were hers.

**MEMORANDUM DECISION AND ORDER - 9**

Mr. Nelson indicates that it may have been error on his part not to have requested a continuance in the trial after Ms. Pace was cross-examined and it was discovered she had been granted immunity. However, a continuance would not have changed Ms. Pace's testimony and co-counsel effectively examined Ms. Pace about her ownership of the drugs. Therefore, even if it was ineffective assistance for counsel not to have requested a continuance, no prejudice has been shown from failing to request a brief continuance. The Court would not have granted more than a brief continuance even if requested at that stage in the litigation. Ms. Pace's credibility on the stand was definitely at issue when she disclosed her immunity agreement and also admitted to methamphetamine use prior to testifying. The Court finds it is a reasonable assumption based on the jury verdict rendered that the jury did not find Ms. Pace's testimony credible since they convicted Mr. Izatt.

Defense counsel also called other witnesses at trial on Defendant's behalf: a former girlfriend, Holly Sutherland, who testified she regularly gave cash to Mr. Izatt and where he had previously worked and Mr. Harvey who testified Crown Royal bags were regularly used to protect meth pipes but he had never seen Justin use a Crown Royal bag for that purpose. While the defense of Ms. Pace owning the drugs and Mr. Izatt not being involved was not believed by the jury, this does not mean counsel was ineffective at presenting a defense. Advocacy is an art and not a science, trials are fluid and unexpected things such as immunity being granted to a witness occur. But strategic choices by counsel must be respected in these circumstances if they are based on professional

MEMORANDUM DECISION AND ORDER - 10

judgment. The Court finds the decision not to call Mr. Izatt as a witness was a strategic decision based on the other evidence admitted and testimony given by Mr. Harvey and Ms. Pace.

Mr. Izatt also points to the affidavit of Ms. Pace that states Mr. Nelson was representing her on state court criminal charges at the same time he was representing Mr. Izatt. Ms. Pace has not shown that a conflict of interest existed since the nature of state court charges are not described and she offered to testify in Mr. Izatt's trial. Moreover, the Court appointed independent CJA counsel for Ms. Pace before she testified at Mr. Izatt's trial.

Ms. Pace alleges that Mr. Nelson did not adequately prepare her for her testimony. Assuming this fact is true, it does not rise to the level of ineffective assistance of counsel as she was not examined by Mr. Nelson and it was Mr. Gatewood's duty to handle her examination during trial. Ms. Pace does not say in her affidavit that she tried to provide additional information about the case to Mr. Gatewood and it was ignored. Counsel cannot be expected to read the mind of a witness about what information they want to provide. Moreover, Nelson indicates over 10 hours were spent preparing Ms. Pace to testify and at no time prior to trial did Ms. Pace allege she was the owner of the drugs.

Ms. Pace alleges in her affidavit that she lived in Justin's house and he was in Boise at the time of the events. But these facts were communicated to the jury via her testimony when Ms. Pace explained her relationship with Mr. Izatt (former girlfriend living at his house with his permission), the fact Mr. Izatt had been in Boise visiting his

girlfriend and the fact she purchased the drugs from Chris Ayers. *See* Trial Transcript, Dkt. 85, p. 9-38 (Transcript pages 288- 317). Ms. Pace indicated to the jury that Mr. Nelson had previously represented her and that she was not happy about the outcome of her charges which stemmed from a stolen property investigation and resulted in drug charges based on trace amounts. The testimony established potential bias for her testimony as it related to her friend Mr. Izatt, but does not establish ineffective assistance of counsel.

The Court acknowledges that Ms. Pace was not a credible witnesses before the jury. She was nervous when testifying and she clearly wanted to tell the jury more than what counsel for the defense or government were asking. She acknowledged her use of drugs over a period of years and it is not unreasonable for the jury to have found the drug usage may have affected her cognitive ability to recall events. Her credibility was also affected by her agreement with the government for immunity.

Mr. Izatt also argues that based on the affidavit of Mr. Harvey, Harvey's testimony was misconstrued by the jury. Mr. Harvey claims when he was asked about buying drugs from Mr. Izatt he said yes. But he did not clarify to the jury "when" the purchases took place and that this sometimes involved purchasing drugs from Ms. Pace after being referred to do so by Mr. Izatt. The Government recalled Mr. Harvey to testify after Ms. Pace testified in Defendant's case-in-chief. *See* Trial Transcript, Dkt. 85, p. 39-41 (Transcript page numbers 318-320). Mr. Harvey testified that he purchased drugs from Ms. Pace in early 2009, late 2008. He stated he purchased the methamphetamine from

MEMORANDUM DECISION AND ORDER - 12

Ms. Pace at Justin's house. Mr. Harvey testified as to the purchase process: he would call Justin Izatt, Mr. Izatt would say he was out of town and to call Ms. Pace. Mr. Harvey would call Ms. Pace and pick up the drugs at Mr. Izatt's house from Ms. Pace. Mr. Harvey would pay Mr. Izatt for the drugs. So when Mr. Harvey was recalled to the stand by the Government, this testimony clarified the time period Mr. Harvey made purchases from Mr. Izatt. The Court is not convinced after reading the transcripts that the jury was misled by Mr. Harvey's testimony. Additionally, it is undisputed that Mr. Harvey was subject to extensive cross examination when he testified in the Government's case-in-chief.

While Mr. Harvey may have also purchased drugs directly from Ms. Pace without Mr. Izatt's involvement as he states in his affidavit, that testimony is not relevant and would not have changed the outcome in this case since it is clear Mr. Harvey testified as to the time period in question that his process of purchasing drugs began by calling Mr. Izatt who directed him to call Ms. Pace, pick up drugs from Mr. Izatt's house and pay Mr. Izatt. A jury could conclude from the testimony that Mr. Izatt was involved in the process of distributing drugs late 2008, early 2009. While Mr. Harvey may have also purchased

other drugs directly from Ms. Pace up until the date he went to jail in October of 2009, those other purchases are not at issue in this case.

Mr. Harvey's affidavit also addresses his opinion that many people in the drug business  use Crown Royal bags. The Court does not contest this opinion. The fact that Mr. Harvey did not see Mr. Izatt use a Crown Royal bag is not probative or persuasive. The Government provided evidence that Mr. Izatt had possession of Crown Royal bags for drugs and paraphernalia in previous drug arrests.  The drugs in the garage ceiling were stored in a Crown Royal bag. It was up to the jury to consider all the evidence presented and determine whether Mr. Izatt should be convicted. The Court finds Mr. Harvey's proffered testimony in his affidavit that he saw Ms. Pace use a Crown Royal bag for glass pipes and other drug paraphernalia is again insufficient to support a claim for ineffective assistance of counsel.

Mr. Harvey says in his affidavit he does not know who placed the drugs in the ceiling in the garage and that he did not tell Mr. Izatt or Ms. Pace that he had discovered the drugs in the ceiling. This is what he testified to at trial. He found drugs in the ceiling when he was installing a garage door opener at Mr. Izatt's house. This is not new evidence and was subject to direct and cross examination at trial so it cannot support a claim of ineffective assistance of counsel post trial. The Court finds the jury was not misled on the facts and even if testimony in Mr. Harvey's affidavit had been included at

trial it would not have changed the outcome in this proceeding in light of all the evidence presented.

Without discussing in detail each specific allegation of ineffective assistance of counsel during the trial, the Court has addressed the main trial allegations and has considered all the alleged instances of ineffective assistance of counsel during the trial. Based on the record in this matter, the Court finds the trial actions, alleged omissions, and decisions, individually or collectively, do not rise to the level of ineffective assistance of counsel as they do not establish the result would have been different if certain witnesses had been called, witnesses had offered additional testimony or a continuance was requested.

**4. Sentencing Claim**

Petitioner claims his counsel was ineffective at sentencing for failing to file any objections to the Presentence Investigation Report, failing to review the report with him prior to the sentencing hearing and failing to request a continuance of the sentencing hearing. Specifically, Mr. Izatt argues that his counsel should have contested his criminal history by arguing because two state convictions were sentenced together, they should have been deemed one conviction instead of two for purposes of determining whether he had two prior convictions for drug trafficking. Additionally, counsel should have argued mitigating factors.

The Court finds these arguments are insufficient to establish ineffective assistance of counsel. Mr. Izatt knew going into the trial that based on his prior drug related convictions, he was facing a mandatory sentence of life imprisonment if convicted as the Government filed a notice it intended to seek the sentencing enhancement prior to the commencement of the trial. CR Dkt. 25. The failure on the part of counsel to file any objections would not have changed the outcome at sentencing. Even if the objections were filed and mitigating arguments made, the Court was without authority to sentence below the statutory mandatory sentence.

While Mr. Izatt wants to argue his two state sentences should not count as two convictions, the Court respectfully disagrees. While Mr. Izatt was sentenced for two different criminal cases on the same day and the sentences ran concurrent to each other for the same length of imprisonment, the Court cannot ignore that Mr. Izatt had two separate convictions. He did not negotiate to have one case dismissed in exchange for pleading guilty to the other case. Instead, each case represented different criminal conduct by Mr. Izatt and each case, regardless of how he was sentenced, resulted in a drug trafficking conviction. Under the Guidelines and the law, the Court had no discretion in counting both drug convictions. Upon the jury returning a guilty verdict in the federal case, the Court was required by law to impose a sentence of life imprisonment without release  pursuant to 21 U.S.C. § 841(b)(1)(A).

**MEMORANDUM DECISION AND ORDER - 16**

On this claim, Mr. Izatt cannot carry his burden to show any prejudice from the alleged ineffective assistance of counsel allegations and the claim must be denied.

**5. Conclusion**

This is a difficult case not because of the facts and the representation of counsel, but because of the mandatory sentence this Court was required to impose. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland* at 691-92 citing *United States v. Morrison*, 449 U.S. 361, 364–365 (1981). Here, the Court finds even if counsel's representation was below the professional standard (which the Court finds it was not), the prejudice prong has not been satisfied and the jury verdict would not have been effected by the alleged instances of ineffective assistance of counsel, individually or collectively, from trial preparation to the trial to the sentencing hearing.

This is not a case of bad lawyering. It is a case of a guilty jury verdict based on all the evidence submitted and the lack of credibility of certain witnesses. The motion for a writ of habeas corpus based on ineffective assistance of counsel must be denied.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability should be issued pursuant to 28 U.S.C. § 2253 only if the petitioner makes a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues differently, or that the issues are adequate to deserve encouragement to proceed further. *Lozada v. Deeds*, 498 U.S. 430, 431-32 (1991) (per curiam); *Barefoot v. Estelle*, 463 U.S. 880, 892-93 (1983); *Williams v. Calderon*, 83 F.3d 281, 286 (9th Cir. 1996) (The standard for obtaining a certificate of appealability under the AEDPA is more demanding than the standard for obtaining a certificate of probable cause pre-AEDPA); *Clark v. Lewis*, 1 F.3d 814, 819 (9th Cir. 1993).

Here, the Court finds a certificate of appealability should be issued based on the life sentence imposed due to the conviction. While this Court does not find the alleged ineffective assistance of counsel claims, individually or collectively, to support a finding a writ of habeas should be granted, the Court also finds the issues are adequate to deserve a review by the Ninth Circuit. For this reason a certificate of appealability is granted.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Motion to Vacate or Set Aside Sentence (CIV Dkt. 1, CR Dkt. 114)

is **DENIED**.

2. The Court **GRANTS** a certificate of appealability on the denial of this § 2255

motion.

DATED:  **February 1, 2017**

Honorable Edward J. Lodge
U. S. District Judge